**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRACIE L. SHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11CV1201SNLJ/MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") partially denying the application of Tracie L. Shell ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. 1381 et seq. Plaintiff has filed a brief in support of the Complaint. Doc.11. Defendant has filed a brief in support of the Answer. Doc. 12. Plaintiff filed a Reply. Doc. 18. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 4.

**II.**
**PROCEDURAL HISTORY**

Plaintiff filed her applications for benefits on June 29, 2009, alleging a disability onset date of October 15, 2006.[1]Tr. 87-96. Her applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 40-47. After a hearing held on April 22, 2010, the ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 6-17. The Appeals Council

---

[1]　　　Plaintiff subsequently amended her onset date to December 31, 2007.

denied Plaintiff's Request for Review on June 10, 2011, Tr. 1-3. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of

pain, the ALJ must consider:

> (1) the claimant's daily activities;

> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

> (3) any precipitating or aggravating factors;

> (4) the dosage, effectiveness, and side effects of any medication; and

> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at

1322. The absence of objective medical evidence is just one factor to be considered in evaluating the

plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations

by third parties and treating and examining doctors, as well as the plaintiff's appearance and

demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the

record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v.

Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003);

Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains

inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence.

Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir.

1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart,

361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226

F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id.

Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell v. Sullivan</u>, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing that she was thirty-two years old; that she finished the tenth grade; that her past work included waitress and line cook; that she last worked on December 31, 2007; that she had numerous problems with her feet, including neuromas and plantar fasciitis; that she had "severe fibromyalgia, possible MS": that she had not been diagnosed with MS; that she was scheduled to see a neurologist on May 20, 2010, to determine whether she had fibromyalgia or MS; that she had not seen a rheumatologist for treatment related to the fibromyalgia; that she had pain in her arms, hands and neck and could not sit still; that she had depression; that the depression caused her to not "want to do anything but lay in bed"; that she had never been referred to a psychiatrist or psychologist for her depression; and that she had crying spells, once or twice a week, which lasted from five minutes to an hour. Tr. 20-27.

The ALJ found that Plaintiff alleged that she became disabled as of December 31, 2007; that she had not engaged in substantial gainful activity since that date; that Plaintiff had the severe impairments of obesity, fibromyalgia/unspecified myalgias and myositis, and recurrent neuromas of the feet; that Plaintiff's alleged mental impairment was non-severe; that she did not have an impairment or combination of impairments which met or medically equaled a listed impairment; that she had the RFC to lift ten pounds occasionally, lift less than ten pounds frequently, stand or walk two hours out of an eight-hour work day, occasionally climb stairs and ramps, never climb ropes, ladders, or scaffolds, could not perform repetitive pushing or pulling with the legs, and must avoid

concentrated exposure to unprotected heights; that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not supported by the medical records and were credible only to the extent they were consistent with her RFC; that Plaintiff could not perform her past relevant work; that there was work in the national economy which a person of Plaintiff's age and education and with her RFC could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider Listing 8.00, Skin Disorders and because the ALJ failed to consider the side effects from Plaintiff's medication.

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including whether Plaintiff's conditions met or medically equaled a listed impairment. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273,

275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003). <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that during the six month period after July 17, 2009, examination records do not reflect that Plaintiff had significantly limiting symptoms related to her fibromyalgai/unspecified myalgia and myositis. The ALJ noted that a "lack of such documentation undermine[d] [Plaintiff's] allegations that this impairment, either by itself or along with other impairments, is disabling." Tr. 15. The court notes that also prior to that date, Gretchen Kluesner, M.D., reported on September 19, November 24, and December 29, 2008, and January 28, March 30, and June 8, 2009, that Plaintiff was in no apparent distress. Tr. 233, 236, 242, 245, 248, 251. Additionally, in June 2008, Dr. Kluesner reported that Plaintiff's extremities appeared normal and she had no edema or cyanosis. Tr. 233. Further, on January 28, 2009, it was reported that Plaintiff was "[n]egative for fatigue, fever and night sweats"; that she was in "no apparent distress." Tr. 241- 42.

The court finds that the ALJ's considering that Plaintiff's records do not reflect that Plaintiff had significantly limiting symptoms related to her fibromyalgia is based on substantial evidence.

Second, that ALJ considered that Plaintiff testified that she was attacked in her home in November 2007; that records do not reflect that she required consistent medical treatment for her mental impairment following the date of this attack, although records do reflect that she took medications for mental impairments, including Zoloft and Prozac. Tr. 12. Further, as stated above, Plaintiff testified at the hearing that she did not have treatment from a psychologist or psychiatrist for her mental condition. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. As such, the court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Third, Plaintiff testified that her medications caused her to gain weight and get confused and tired. Tr. 29-30. Plaintiff contends that the ALJ did not consider side effects from her medication, in particular Demerol. Dr. Visser reported, on December 31, 2008, that Plaintiff's only medication was Zoloft. Tr. 262. Also, it was reported, on January 22, 3009, that Plaintiff took Zoloft and Prozac for depression and that they were her only medications. Tr. 230. As of September 16, 2009 and December 18, 2009, Dr. Visser's notes do not reflect that Demerol was either a current or newly prescribed medication. Tr. 336, 343. January 2009 notes of Victoria L. Yenzer, M.D., likewise, do not reflect that Plaintiff's medications included Demerol. Tr. 241. Dr. Visser did not prescribe Demerol for Plaintiff until February 25, 2010. Tr. 193, 330. Upon prescribing this medication, Dr. Visser did not authorize refills. In regard to Plaintiff's allegation that the ALJ did not consider the side effects from Demerol, an ALJ is required to consider side effects a claimant suffers from

medication.  To the extent Plaintiff had side effects from Demerol, however, such side effects did not

exist for a period of twelve consecutive months. See 20 C.F.R. § 414.909 ("Unless your impairment

is expected to result in death, it must have lasted or must be expected to last for a continuous period

of at least 12 months. We call this the duration requirement.").[2]  Moreover, conditions which can be

controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009);

Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th

Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered

disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir.

1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that

can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448,450 (8th

Cir. 1989).  Additionally, the absence of side effects from medication is a proper factor for the ALJ

to consider when determining whether a plaintiff's complaints of disabling pain are credible. See

Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the

ALJ to consider the fact that no medical records during this time period mention [the claimant's]

having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir.

1994).  Significantly, Plaintiff's dosage of Prozac and Zoloft were increased on January 28, 2009,

indicating that she did not have side effects from this medication. Tr. 241.  As such, the court finds

that the ALJ's consideration of side effects from Plaintiff's medications is supported by substantial

evidence and that his decision, in this regard, is consistent with the Regulations and case law.

---

[2]        Plaintiff relies on Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998), in support of
her argument that the ALJ did not consider the side effects of Demerol.  Cox is factually
distinguishable from the matter under consideration in that it was recommended that the claimant
in Cox have an intrathecal narcotic infusion pump implanted and she required "ever increasing
does of morphine since that time." Id. at 1206.  As discussed above, Plaintiff's being prescribed
Demerol was brief.

Fourth, Plaintiff stated in a Function Report - Adult, dated July 16, 2009, that, when she gets up in the morning she takes a shower, gets dressed, wakes her children, fixes breakfast, watches the news, "tr[ies] to do some cleaning," goes to doctors' appointments, and fixes dinner; that she cares for her three children for whom she does "everything"; that the meals she prepares are "sandwiches/frozen food"; that she prepares meals "2 to 3 times daily"; that she is able to dust and vacuum for one and a half hours; that she does the laundry "all day"; that she does not do yard work because she cannot walk or bend for that long of a period; that everyday she tries to go outside; that whether or not she drives "depends on meds and how they make [her] feel"; that she shops for food once every two weeks and this takes "at least 2 hrs"; and that she can count change and cannot pay bills or use a checkbook. Tr. 134-39. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883. "Inconsistencies between [a claimant's] subjective complaints and her activities diminish her credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors,

cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Fifth, the ALJ considered that no physician every found or imposed any long-term, significant, and adverse mental or physical limitations on Plaintiff's functional capacity. Tr.16. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996)). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

Sixth, to the extent Plaintiff claims her activities are restricted beyond the limitations which the ALJ included in her RFC, a record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). In particular, the ALJ considered that when Plaintiff presented at the emergency room, on February 11, 2008, just six weeks after her alleged onset date, she made no assertion of limitations due to fibromyalgia and "instead alleged respiratory impairments." Examination showed that she had no generalized weakness; that her range of motion was within normal limits; that she had no tenderness in her extremities. Tr. 14. In March 29, 2008, when Plaintiff presented with abdominal pain, she had no pedal edema, cyanosis, or clubbing. On January 22, 2009, Dr. Visser reported that Plaintiff had "full strength bilaterally of dorsiflexion, plantar flexion, foot inversion and eversion,

hamstsrings, and quadricepts"; that Plaintiff had full right toe flexion and extension; that on the left here was "some give-away weakness testing of the toe flexion and extension"; that a scar over the let lateral dorsum was well healed. Tr. 230. On September 19, 2008, on examination, Plaintiff had full range of motion in all extremities. On January 22, 2009, it was noted that Plaintiff's extremities were within normal limits and that she lacked edema and cyanosis. Tr. 15. Examination records of December 10, 2009, reflect that a mass which Plaintiff had on her right heel did not limit Plaintiff's muscle strength or result in extremity clubbing or cyanosis. Tr. 15.

Seventh, the ALJ considered diagnostic test results. In particular, the ALJ considered that chest x-rays of February 11, 2008, indicated that Plaintiff's lungs were clear and that her cardiomediastinal silhouette was within normal limits. Tr. 14. A report from St. John's Mercy Imaging Services, dated January 9, 2009, states that Plaintiff underwent an MRI of the left foot and that the "areas of concern [were] not really well demonstrated" and that there was "some very minimal nonspecific signal changes in the area of the MTP joint of the first and third toes." Tr. 261. The ALJ also considered that results from a nerve conduction/electromyogram preformed, on January 22, 2009, were within normal limits. Tr. 15, 230. It is proper for an ALJ to consider the absence of objective medical evidence to support a claimant's complaints of disabling pain, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). The court finds that the ALJ's consideration of objective test results is based on substantial evidence and that it is consistent with the Regulations and case law.

Eighth, as considered by the ALJ, Plaintiff had surgery on her left foot for a stump neuroma, third interspace, on February 17, 2009. Tr. 258. When Plaintiff next complained of pain on March 11, 2009, it was in her right foot. Tr. 254. Records reflect that Plaintiff again complained of left foot

pain on August 7, 2009. Tr. 344. Plaintiff then had a surgical excision of a mass on the plantar right heel on October 15, 2009. Tr. 294. On November 4, 2009, Dr. Visser reported that Plaintiff was "pain free" since her last surgery and that she was ready to wear a shoe. Tr. 338. It was not until March 9, 2010, that Dr. Visser diagnosed a cyst on Plaintiff's left medial plantar heel and recommended excision. Tr. 329. 20 C.F.R. § 414.909 states that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." The court finds that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.  Whether Plaintiff Met or Equaled a Listed Impairment:**

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's conditions met or medically equaled Listing 8.00, the listing for skin disorders.

An ALJ must determine whether a claimant's impairment meets or equals one of the impairments listed in Appendix 1 to 20 C.F.R. pt. 404. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goff v. Barnhart, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. § 404.1520. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To equal medically a listed impairment, the medical findings must at least be equal in severity and duration to the listed impairment. 20 C.F.R. § 404.1526.(a). Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified

medical criteria.'") (emphasis in original). If the claimant satisfies each of these three elements, the claimant is conclusively presumed to be disabled. Bowen, 482 U.S. at 141.

First, the court has discussed above the ALJ's consideration of Plaintiff's medical records upon determining that her allegations of pain and limitations were not fully credible. The court has found that the ALJ's decision, in this regard, is based on substantial evidence. It was only after considering Plaintiff's medical records, in great detail, that the ALJ found that Plaintiff did not meet or medically equal a listed impairment.

Second, to the extent the ALJ in the matter under consideration did not specifically address Listing 8.00, an ALJ's failure to address a specific listing is not reversible error if record supports his overall conclusion. Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005). In fact, the ALJ did state that he considered "a number of listings" in Plaintiff's case.

Third, it was Plaintiff's burden to show that she met or medically equaled the requirements of Listing 8.00. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

Fourth, the ALJ did state that the listings relevant to Plaintiff's claims all require that a claimant be able to ambulate effectively and that Plaintiff failed to demonstrate that she is unable to meet this criteria. Tr. 13. To have met Listing 8.00, Plaintiff must establish that she meets this criteria. See Marciniak, 49 F.3d at 1353.

Fifth, Listing 8.00 requires an ALJ to assess the severity of a claimant's skin lesions as well as the "frequency of flareups," how symptoms, "including pain," limit a claimant, the extent of a claimant's treatment, and how treatment has affected the claimant. 40 U.S.C. pt. 404, subpt. P, app. 1, C. Pursuant to Listing 8.00 "[e]xtensive" lesions involve multiple body sites or critical body areas and result in a "very serious limitation. 40 U.S.C. pt. 404, subpt. P, app. 1, C.1. Examples of extensive lesions include skin lesions that "interfere with the motion of [] joints and "very seriously limit [] use

of more than one extremity and lesions on the soles of both feet, the perineum, or both inguinal areas which very seriously limit [a claimant's] ability to ambulate." 40 U.S.C. pt. 404, subpt. P, App. 1, C.1.a and c. Plaintiff did testify that she could not stand on her feet longer than two or three minutes and that she could not walk very far without being in pain. Tr. 29. As discussed above in regard to Plaintiff's credibility, the ALJ considered that Plaintiff was found to have normal range of motion in February 2008, about six weeks after her alleged onset date. Additionally, on September 18, 2008, Plaintiff had full range of motion in all extremities and on January 22, 2009, Plaintiff had no significant range of motion limitations. Further, the record does not reflect that Plaintiff required an assistive device to ambulate. To the extent Plaintiff contends she was unable to ambulate so as to meet the requirement of Listing 8.00, her failure to use an assistive device detracts from her credibility. See e.g., Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Sixth, even if a claimant does not meet or equal a listing, the ALJ must still consider whether there is work in the national economy which the claimant can perform. The ALJ herein did take into consideration Plaintiff's allegations regarding difficulty walking, in that he found that she could walk only two hours out of an eight hour day, as well as that she could lift ten pounds frequently, could occasionally climb stairs and ramps, and never climb ropes, ladders, or scaffolds, and avoid concentrated exposure to hazards and unprotected heights.

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical

evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. The ALJ in the matter under consideration considered the medical evidence as well as Plaintiff's testimony before concluding that she had the above described RFC. The court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the Regulations and case law.

After determining Plaintiff's RFC, the ALJ considered whether there was work in the national economy which a person with Plaintiff's RFC and with her age and education could perform. Tr. 16. Because the ALJ found that, in Plaintiff's case, the full range of sedentary work was eroded, the ALJ obtained the testimony of a VE. The ALJ posed a hypothetical to the VE which included all of Plaintiff's limitations which the ALJ found credible and as included in her RFC. Where a hypothetical question to a VE precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). The VE testified that, although Plaintiff cannot return to her past relevant work as a waitress, there is a substantial amount work in the national economy which Plaintiff can perform, including assembler. Tr. 32-33. The ALJ noted that the VE's testimony was consistent with the Dictionary of Occupational Titles and

found that, based on the VE's testimony, Plaintiff was not disabled. Tr. 17. The court finds, therefore, that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations. As such, the court finds that the ALJ's determination that Plaintiff did not meet or medically equal a listed impairment is based on substantial evidence and that Plaintiff's argument that the ALJ did not properly consider Listing 8.00 is without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is based on substantial evidence contained in the record as a whole, and that the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint be **DENIED** and that Judgment be entered in favor of Defendant. Docs. 1, 11.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 14th day of May, 2012.